IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARY K. RAMSEY, o/b/o Joe Mark King )
)
v. ) No. 3:14-1917
) Judge Trauger/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 18). Plaintiff has further filed a reply in support of her motion. (Docket Entry No. 19) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff's decedent, Mr. Joe Mark King, filed his applications for benefits in

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

June 2010, alleging disability onset as of November 11, 2008.[2] (Tr. 15) His applications were denied at the initial and reconsideration stages of state agency review. He subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on November 20, 2012, when Mr. King appeared with counsel and gave testimony. (Tr. 48-81) Testimony was also received from an impartial vocational expert. The ALJ adjourned the hearing but decided to send Mr. King for a post-hearing consultative psychological evaluation. After this evaluation was performed, a supplemental hearing was held in this case on February 13, 2013. (Tr. 32-43) At the conclusion of the supplemental hearing, the ALJ took the matter under advisement until April 26, 2013, when she issued a written decision finding Mr. King not disabled. (Tr. 15-27) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since November 11, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bilateral hearing loss, hypertension and obesity. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry 20 pounds

---

[2]It was recognized at the hearing that Mr. King had amended his alleged onset date to May 27, 2010. (Tr. 61, 256)

occasionally. However, he can stand and walk at least two hours and has no restrictions on sitting. He cannot climb ladders, ropes or scaffolds and can only occasionally balance, climb stairs, kneel, crawl, crouch and stoop. He can work in an environment with no more than moderate noise.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 11, 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 11, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17, 21, 25, 26)

On August 7, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. On December 8, 2014, Mr. King died of atherosclerotic cardiovascular disease. (Docket Entry Nos. 15, 15-1) His sister, Mary Ramsey, was substituted as plaintiff in

this action. (Docket Entry No. 16)

The court has jurisdiction over this timely filed civil action. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the medical evidence in this case is taken from plaintiff's brief, Docket Entry No. 17-1 at pp. 2-3:

> Records in the file show assessments of arthritis; HTN; morbid obesity; tachycardia; glaucoma, primary open angle; diabetes mellitus; osteoarthrosis, NOS, unspecified; and lumbago. R. 278, 353, 367, 368, 372, and 373.
>
> Dr. Johnson performed a CE and limited the claimant to occasionally lifting and carrying 20 pounds and standing and walking for at least two hours. R. 282. At the time of the physical examination the claimant's weight was recorded at 450 pounds. R. 281.
>
> The claimant was admitted on September 10, 2011. R. 310. At that time he was assessed with respiratory insufficiency; hypoxemia; and possible congestive heart failure. R. 310. An echocardiogram revealed mild biatrial enlargement; right ventricular dilation; concentric left ventricular hypertrophy; grade 1 diastolic dysfunction; and mild mitral regurgitation and tricuspid regurgitation. R. 341-342.
>
> Lab results revealed elevated glucose levels and abnormal HgB A1C levels. R. 318, 319, 323, 328, 333, 343, 357, 362, and 370.
>
> A physical examination was performed in September of 2012 and revealed that the claimant's weight was 450+ pounds. R. 356.
>
> The claimant's employer, Prospect, Inc., completed a form and indicated that the claimant was allowed multiple accommodations during his employment. R. 354-355.

Further discussion of the record evidence is incorporated as necessary in the conclusions below.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred by failing to find severe, or to sufficiently state why she did not find severe, the following impairments: arthritis, tachycardia, respiratory insufficiency, hypoxemia, biatrial enlargement, right ventricular dilation, concentric left ventricular hypertrophy, grade 1 diastolic dysfunction, mitral regurgitation, tricuspid regurgitation, glaucoma, diabetes mellitus, osteoarthrosis, and lumbago. However, the ALJ in this case performed a comprehensive review of Mr. King's impairments for purposes of the step two severity analysis. (Tr. 18-20) In that review, the

ALJ made explicit reference to each of the above impairments, with the sole exception of lumbago. However, lumbago is simply a medical term for low back pain and, as such, is a symptom that was duly considered by the ALJ in determining Mr. King's RFC. Moreover, contrary to plaintiff's argument, the ALJ gave an entirely sufficient explanation for why she did not find severe Mr. King's arthritis/osteoarthrosis (explaining that the record supported the existence of joint pain due to body habitus, but not the diagnosis of arthritis); his cardiopulmonary diagnoses (explaining that these mildly abnormal findings were made in the course of a "hospitalization ... for acute pneumonia and no heart diagnosis was ultimately given"); glaucoma (explaining that "his vision is near normal, with corrective lenses, he is still able to drive, and did not describe significant double vision"); and, his diabetes (explaining that he had no significant signs of neuropathy and that his blood sugar and A1c levels fluctuated, with lower scores below the diagnostic range for diabetes). (Tr. 18-19)

In addressing Mr. King's heart condition, plaintiff argues as follows:

> The claimant's heart issues were revealed on the echocardiogram. [(Tr. 340-42)] This cannot be refuted. The ALJ minimized these heart conditions. ... [T]he claimant's cause of death was atherosclerotic cardiovascular disease. The Death Certificate also stated that the onset of this condition was "years." The fact that the claimant died from this condition and that it had been present for "years," certainly supports a finding that it caused more than a slight abnormality and was severe.

(Docket Entry No. 17-1 at 6) Of course, the fact that Mr. King died from cardiovascular disease after the ALJ rendered her decision says nothing of any work-related limitation of function that should have been apparent at the time of the ALJ's decision. The ALJ rightly found that the evidence before her did not support any severe heart impairment, noting that

8

most of the findings revealed by Mr. King's echocardiogram were mild, and his ejection fraction of 60% was normal.[3] (Tr. 340-42)

In addition, as the ALJ proceeded beyond step two and considered Mr. King's symptoms of pain and fatigue at subsequent steps of the sequential evaluation process, any error in the step two severity determination would be harmless. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). This argument has no merit.

Plaintiff next argues that the ALJ erred in failing to include an explicit function-by-function assessment in her determination of Mr. King's RFC. The Sixth Circuit has addressed this matter as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)]*,* the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, the ALJ addressed Mr. King's exertional and nonexertional capabilities, making reference to the evidence that supports her conclusions. While plaintiff complains that the RFC assessment does not speak to Mr. King's ability to push/pull or to frequently lift/carry, and further that it does not define what the limitation to no more than moderate noise means, no evidence of

---

[3] http://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286

any particular limitation that should have been incorporated in these domains is cited. The ALJ reasonably resolved the issue of Mr. King's tolerance for workplace noise by reference to the observation by consultative examiner Dr. Roy Johnson that Mr. King could hear well enough when spoken to from a distance of six feet in a clinical setting (Tr. 23), compared with the nonexamining consultant's opinion that Mr. King must avoid concentrated exposure to noise (Tr. 24). Notably, the lack of any further definition with respect to pushing/pulling and noise tolerance did not concern the vocational expert, who considered the hypothetical RFC given to her by the ALJ and identified available jobs that would require occasional lifting of up to 20 pounds but were otherwise able to be performed either sitting or standing. (Tr. 36-37) The undersigned finds that the ALJ's RFC determination evidenced her entirely adequate consideration of Mr. King's functional abilities, and complied with SSR 96-8p. See, e.g., Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 729 (6th Cir. Sept. 5, 2013).

Plaintiff argues that the ALJ failed to adequately account for Mr. King's obesity and resulting functional limitations. However, the ALJ found obesity to be a severe impairment, stating as follows:

> There is no indication in the medical record that the claimant's weight increases his limitations beyond those described in his residual functional capacity as assigned above. He is required to stand no more than two hours in an entire workday and to lift no more than 20 pounds occasionally. He is not required to climb stairs or engage in other postural activities more than occasionally. The claimant's weight at 450+ pounds is clearly limiting, and restrictions have been provided for that impairment.

Contrary to plaintiff's argument that the ALJ "made no true analysis of the effects of obesity

as required by SSR 02-1p" (Docket Entry No. 17-1 at 8), the undersigned finds that the identified limitations attributed to Mr. King's obesity reflect the ALJ's sufficient consideration of that impairment.

Finally, plaintiff argues that the ALJ erred by failing to apply the Medical-Vocational Guidelines non-mechanically, citing the fact that Mr. King was approximately 7 months shy of his 55th birthday on the date of the ALJ's decision -- at which age he would have been properly categorized as an individual of advanced age and therefore disabled under the grids if limited to light exertion.[4] The relevant regulation provides as follows:

> When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Plaintiff complains that the ALJ in this case did not explicitly consider whether to use the older age category, arguing in her reply brief that, "[s]ince the decision does not contain any statements to show that the ALJ was even aware of the upcoming change of age categories, one can only assume that she did not consider the 'borderline situation.'" (Docket Entry No. 19 at 4) Without citing any supporting case law, plaintiff argues that if the ALJ had recognized the borderline situation, application of the

---

[4]Although the ALJ established Mr. King's age categorization as of the date of alleged disability onset (Tr. 25), it is his age as of the date of the ALJ's decision that informs the application of the grids. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 780 (6th Cir. 1987).

older age category would have been appropriate based on the additional factors that Mr. King's conditions, including his complications and limitations from obesity, were longstanding and had not recently arisen, and that he had "a history of working in a sheltered workshop environment where he was allowed accommodations." Id.

However, the ALJ was plainly aware of Mr. King's date of birth, citing to that date as well as to § 404.1563 to support her determination that he "was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date." (Tr. 25)[5] Indeed, at Mr. King's first hearing, on November 20, 2012, the ALJ wished him a "[h]appy belated birthday" after he confirmed his birth date as November 11, 1958, making him 49 years old on the hearing date. (Tr. 52-53) After a brief supplemental hearing on February 13, 2013, the ALJ issued her decision on April 26, 2013, approximately 6.5 months before Mr. King's 55th birthday. As noted by defendant, the Sixth Circuit has spoken at length on the subject of an ALJ's obligations when confronted with an arguably borderline case of age categorization, in Bowie v. Comm'r of Soc. Sec., 539 F.3d 395 (6th Cir. 2008), deciding there that the regulations do not require the ALJ to make explicit her consideration

---

[5]The fact that the ALJ made such findings while referring to § 404.1563 has been noted to provide some indication that the ALJ considered the arguably borderline age situation:

> It is worth noting that it is not beyond dispute that the ALJ failed to provide a sufficient indication that he considered Bowie's borderline age situation. The ALJ cited 20 C.F.R. § 404.1563 in categorizing Bowie as a "younger individual," after listing Bowie's birth date and age. The ALJ's citation of § 404.1563 indicates, at the very least, that he was aware of the existence of the regulation governing age categorization. And, as the district court noted, it is fair to assume from the ALJ's notation of Bowie's age and birth date that he realized she was quickly approaching age 50.

Bowie v. Comm'r of Soc. Sec., 539 F.3d 395, 400 n.5 (6th Cir. 2008).

of the situation:

> While an ALJ may need to provide, in cases where the record indicates that use of a higher age category is appropriate, some indication that he considered borderline age categorization in order to satisfy a reviewing court that his decision is supported by substantial evidence, § 1563(b) does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case. ...
>
> Although ALJs are obligated by [§ 404.1563(b)] not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will "consider" veering from the chronological-age default in borderline situations.
>
> * * *
>
> That § 1563(b) does not impose a *per se* procedural requirement to address borderline age categorization explicitly in every borderline case does not relieve ALJs of their obligation to provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence. For example, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the "younger individual" age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry. *See* Rule 201.18, App. 2 to Subpart P of 20 C.F.R. § 404; HALLEX II–5–3–2. In that situation, the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold.

Id. at 399-401.

Against the backdrop of this hypothetical claimant whose "additional vocational adversities ... would merit some discussion of proper age categorization," the court in <u>Caudill v. Comm'r of Soc. Sec.</u>, 424 Fed. Appx. 510 (6th Cir. May 25, 2011), considered the case of a claimant who was approximately 54 years and 10 months old at the time of the ALJ's decision, who had a second-grade reading level, and whose only relevant work experience was in the coal mining industry, yet whose borderline age situation was not mentioned in the ALJ's decision. Despite similarities to the hypothetical claimant proposed in <u>Bowie</u>, Mr. Caudill's case was found to have been properly decided under his chronological age classification without further discussion, as the court hewed to the holding of <u>Bowie</u> rather than the hypothetical it proposed in dicta:

> . . . Caudill's case is controlled by Bowie's holding instead of its dicta. Caudill's work is semiskilled, not unskilled as in the hypothetical, and he is capable of performing light work, rather than sedentary work as in the hypothetical. . . .
>
> In sum, Caudill's case compares much less obviously to *Bowie's* hypothetical scenario than would at first appear. In fact, Bowie herself may even be more akin to the hypothetical than Caudill: Bowie had two limitations described in the hypothetical (unskilled work history and ability to do sedentary work) and she was given the benefit of the doubt regarding the credibility of her alleged limitations. Caudill, on the other hand, has at most one limitation (work history in an isolated industry) and some inconclusive and contradictory evidence of another limitation (supposedly being "barely literate"). Further, the ALJ found Caudill's alleged limitations to be less than credible. Although the two cases are not precisely on all fours, Caudill's case falls within *Bowie's* holding.

<u>Caudill</u>, 424 Fed. Appx. at 518.

In the case at bar, Mr. King was more than six months shy of his 55th birthday

at the time of the ALJ's decision, was found capable of performing a limited range of light work, had past relevant work that included semiskilled jobs (Tr. 60-61), and was found "not fully credible" (Tr. 25). In light of the precedent cited above, the undersigned finds no error in the ALJ's determination of Mr. King's age category for purposes of applying the grids.

In sum, the decision of the ALJ is supported by substantial evidence, and should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 24th day of February, 2016.

                              s/ John S. Bryant
                              JOHN S. BRYANT
                              UNITED STATES MAGISTRATE JUDGE